STATE, Respondent, vs. BROZYNA, Appellant.

*June 7—June 21, 1939.*

164

For the appellant there was a brief by *Evrard & Evrard* and *John W. Byrnes,* all of Green Bay, and oral argument by *R. E. Evrard.*

For the respondent there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Richard J. Farrell,* assistant district attorney of Brown county, and oral argument by *Mr. Farrell.*

FRITZ, J. Some time before the middle of September, 1937, the Bertrand's Sport Shop in Green Bay was broken

into in the nighttime. A Harrington-Richardson revolver and other articles were stolen. Edmund Brozyna was charged with the crime. Payson Williams confessed to his guilt and implicated Brozyna, who denied any connection with the burglary, presented an alibi, and offered evidence of his good reputation as an honest and law-abiding citizen.

The information alleged that the crime occurred on the 14th of September, 1937. Williams said it was about the middle of September, and that the defendant was there and participated in the burglary. In order to weaken the credibility of this testimony, the defense attempted to prove by cross-examination of Williams that in a previous trial he had testified that he never was with the defendant prior to September 22, 1937. The district attorney objected to any reference being made to other proceedings unless they were identified. The court then sent for a record and asked the defendant's counsel if that was the record of the proceedings referred to. When counsel replied that it was, the court in the presence of the jury read aloud enough of that record to indicate that the defendant, together with Williams and Willis Jacobs, had been charged with an assault with deadly weapons and intent to rob. The defendant's counsel then objecting, the court turned to the witness and said: "This is a question that was asked you with reference to your examination at that hearing. So now you know what he is asking you about."

The defendant assigns this incident as error requiring a reversal of the judgment, emphasizing the court's refusal to let it appear that the defendant was acquitted of the charges there made. However, it appears that in response to a request to have the record of acquittal introduced, the court said: "That is the record here, that he has never been convicted of any offense." The variance in the testimony which Williams gave at the time referred to and on this trial was established and the defendant had the benefit of the impeachment. The defendant and a young lady to whom he was

engaged testified that they were together during the hours in which Williams said that the burglary occurred.

The state called as a witness one Scanlan who testified that he pawned a revolver of the same description as the one taken in the burglary, and that he received $4 for it and gave the money to the defendant at the Arcade poolroom. Jacobs testified that he gave the pistol to Scanlan at defendant's request, to be pawned. The evidence shows that this transaction occurred September 29th, about 1:30 p. m. In behalf of the defendant evidence was offered tending to show that on September 29th the defendant, who was a painting contractor, was at St. Joseph's Orphanage, where he was engaged with a helper, and that he ate his noon meal there that day. The helper testified, "I remember working for Ed Brozyna on September 29th, on the outside of this building, on windows, painting sash. Ed Brozyna ate his meals there, too. When he left the place he would return usually with merchandise. Sometimes I would only see him a few hours a day."

There was a sharp dispute in the evidence. Although there are circumstances tending to weaken the effect of testimony given by important witnesses for the state, a jury issue was presented. And it must be said that the defendant evidently had more familiarity with Williams, Jacobs, and Scanlan than he was willing to admit upon the trial. He testified to lending his car to "these boys four times, sometime the last of September or October."

In support of the defense, counsel for the defendant called and examined James Stathas and Mike Queoff in relation to the defendant's reputation as a law-abiding citizen, and both witnesses testified that it was good. In rebuttal the state called Frank Heitzke, a police officer, and asked him whether he ever got a call during the last year from the Brozyna home. On defendant's objection the court excluded all testimony in relation to such a call and limited the inquiry to testimony as to the defendant's reputation as a law-abiding citizen. Heitzke testified that his reputation in that respect

was bad; and when asked whether he had any facts as basis for his statement he answered, "As a police officer only." The court denied a motion to strike that answer and instruct the jury to disregard it. No prejudicial error was committed in these respects. The defendant having introduced testimony that his reputation as a law-abiding citizen was good, it was certainly proper for the state to introduce testimony on rebuttal that the defendant's reputation was bad in that respect; and as the officer had testified that he knew of that reputation, his testimony on that subject was clearly competent. Neither his knowledge nor his testimony in respect thereto was incompetent by reason of his having acquired knowledge thereof in his capacity of a police officer. All assignments of error relied upon for a reversal of the judgment have been considered and found insufficient. The criticism of the instruction to the jury and of the refusal of the court to include in the charge the specific request of the defendant with relation to conviction resting upon the unsupported testimony of an accomplice is not well founded. The request included matter suggesting promises of leniency made by the district attorney or by state authorities concerning which there was no evidence. In its general charge the court fully instructed the jury as to the caution to be used in weighing the testimony of an accomplice. We find no prejudicial error.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). I agree that a jury issue existed and that most of the assignments of error are not well founded, but I am convinced that a serious question arises over the treatment of the character evidence offered by the defendant.

In a trial of one charged with crime it is proper for the defendant to offer affirmative evidence of his reputation for a trait of character which would tend to make it unlikely that he would commit the act. If the defendant can establish good character he is entitled to the benefit of that fact in the

consideration of his case by the jury. The estimate attached to the defendant by witnesses familiar with his repute in the community of his residence is a matter which may be inquired into. Well-defined rules govern the admissibility of such evidence. When the defendant is allowed to show his own good character to aid in the demonstration of his innocence, the prosecution is allowed to use the opposite fact for the opposite purpose. Wigmore, Evidence, p. 268, § 55; Wharton, Criminal Evidence, p. 456, § 330. Again established rules govern the admissibility of this opposing evidence. *Schwartz v. State* (1920), 171 Wis. 306, 177 N. W. 15. A witness to reputation cannot give the result of his own personal experience. He is confined to evidence of general reputation. Testimony tending to prove the defendant guilty of another distinct offense is not admissible for the purpose of raising an inference that he is guilty of the offense charged, and it is equally improper to raise by insinuation a suspicion that the police know of other guilty conduct.

After the court had received character testimony offered by the defendant, a police officer was called in rebuttal and the following interchange took place:

"*Q*. Mr. Heitzke, did you ever get any call from the Brozyna home at any time last year?

"Mr. Evrard: Improper rebuttal testimony.

"*Q*. As to—

"Mr. Evrard: And further ground that it is immaterial.

"The Court: I don't know.

"Mr. Bong: Just rebuttal as to his good character.

"The Court: Ask him about his character; never mind about the calls.

"*Q*. You know anything about the reputation and character of Edmund Brozyna? *A*. Yes.

"*Q*. What is that reputation? *A*. We had a call—

"Court: No, what is it, good or bad? What is his reputation; you say you know what it is, good or bad? (Witness hesitates.) *A*. Well, that is a pretty direct question.

"*Q*. If you can't answer, say so; if you can answer, answer.

"*Q*. What was your answer?

"The Court: He hasn't answered it.

"*A*. Was that question put to me whether his character was good or bad?

"The Court: With respect to what he wants to know?

"*Q*. His reputation in the community for law-abiding citizen? *A*. Well, it is bad.

"*Q*. Have you any facts that you base that statement on? *A*. As a police officer only.

"Mr. Evrard: I move that that answer be stricken from the record and that the court instruct the jury to disregard the statement of the police officer.

"The Court: Motion denied."

It seems to me that the witness did not unfold any general reputation, that in spite of the effort of the trial court the exact trait of character involved was lost sight of and that the testimony of this officer was limited by and based on what occurred when the "call" came, or on what he was told by Williams, Jacobs, and Scanlan. Under the rule of *Schwartz v. State*, it was error to refuse to strike this testimony. The jury had to decide whether the defendant, or Williams, was telling the truth. There was corroboration for the testimony of Williams, as there was for that of the defendant. Williams' testimony and that of his corroborating witnesses was affected by convictions of crime. In weighing this testimony offered by the state against testimony offered by the defendant to prove that he had not participated in the crime, the defendant's good reputation, if it existed, was a fact to be given consideration. If this proof was improperly rebutted, a serious damage to the defendant's case must have occurred. What effect was given the officer's testimony on this matter? It was emphatically placed before the jury. It would tend to create an impression that the prosecution had facts, which they were not permitted to disclose, showing bad character of the defendant. It could have no influence other than to diminish the weight of the testimony of neighbors who said that the defendant's character was good. The motion to strike should have been granted.

Good character cannot avail against facts strongly proven, as in *Schwartz v. State*. But where the record presents a controversy in which the jury might reasonably find the defendant not guilty, prejudicial error exists when a fact so favorable as good character is overthrown by incompetent evidence of the kind set forth. *Alsheimer v. State* (1917), 165 Wis. 646, 163 N. W. 255. Because of this I am unable to concur in the affirmance of the judgment.